NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1528
_____

RABINDER BALAMI,
                    Petitioner

v.

ATTORNEY GENERAL UNITED
STATES OF AMERICA,
                    Respondent
_____

Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A208-920-974)
Immigration Judge: Honorable Leo A. Finston
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 27, 2017
_____

Before: GREENAWAY, JR., COWEN, *Circuit Judges,* and PADOVA, *Senior
District Judge.*[*]

(Opinion Filed: December 4, 2017)

_____

[*] The Honorable John R. Padova, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

_____

OPINION[**]

_____

PADOVA, *Senior District Judge*.

Rabinder Balami petitions for review of a decision and order of the Board of Immigration Appeals ("BIA") dismissing his appeal from the decision of the Immigration Judge ("IJ") that denied his applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

**I.**

Balami is a native and citizen of Nepal, who entered the United States without proper documentation on January 28, 2016. The Department of Homeland Security commenced removal proceedings on February 16, 2016. Seeking relief from removal, Balami filed applications for asylum, withholding of removal, and relief under the CAT, asserting that members of the Maoist Party in Nepal had persecuted him on account of his affiliation with the Nepali Congress Party.

Balami testified under oath before an IJ and submitted supporting documentation. He testified that he was born in Nepal in 1984 and lived there for most of his life. In 2012, he was followed by individuals who asked him to join the Maoist Party and had to

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

run away from them. The next year, he was again asked about joining the Maoist Party, this time by individuals who approached him while he was working at a restaurant. When he told these individuals that he was not interested in joining the Maoists, they got angry, one hit him in the head with a beer bottle, one threw a bottle at his feet, and another grabbed him by the neck. They then threatened to kill Balami if they saw him again. Balami testified that he went to a medical clinic for injuries he sustained in that attack and received stitches in his knee. Several months after this incident, when Balami was working at a different restaurant in another town, he got a feeling that someone was following him, but never actually saw anyone. Then, in June of 2015, Balami was out walking in yet another town in Nepal when two armed members of the Maoist Party approached him. One grabbed him by the neck from behind, but Balami ran away, and the Maoists chased him with their guns. Three months later, Balami left for the United States. While he was traveling to the United States, a member of the Maoist Party called his parents and threatened them. In support of this assertion, Balami's father, brother, and wife submitted affidavits stating that a Maoist called and demanded either a donation or that Balami join the Maoist Party and threatened to take "severe action" if the demands were not met.

After considering all of the evidence presented, the IJ denied Balami's applications and ordered his removal to Nepal. Although the IJ found that Balami was not credible, he also analyzed the evidence under the assumption that Balami was credible. Upon doing so, the IJ concluded that Balami had not sustained his burdens of

proof applicable to asylum, withholding of removal under the INA, and relief under the CAT. Balami appealed the IJ's decision and order, and the BIA dismissed the appeal. While the BIA declined to reach the IJ's determination that Balami was not credible, it agreed with the IJ's alternative determination that, even if Balami was presumed to be credible, he had not sustained his applicable burdens of proof. Balami filed a timely petition for review.

## II.

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a). Where, as here, "the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA."[1] *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004) (citations omitted).

Under the INA, the Attorney General may grant asylum to any alien who demonstrates that he meets the definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1101(a)(42)(A). Accordingly, an asylum applicant may demonstrate that he qualifies for asylum by

---

[1] We do not, however, review issues in the IJ's decision that the BIA did not reach. *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009). Thus, like the BIA, we will assume that Balami was a credible witness.

4

establishing either past persecution or his well-founded fear of future persecution. *See id.* The applicant must also establish that the acts of persecution were "committed by the government or forces the government is either unable or unwilling to control." *Garcia v. Att'y Gen.*, 665 F.3d 496, 504 (3d Cir. 2011) (quoting *Sukwanputra v. Gonzales*, 434 F.3d 627, 637 (3d Cir. 2006)).

To establish a right to mandatory withholding of removal under the INA, an applicant must show that there is a "clear probability" that he will be persecuted when returned to his country. *Chen*, 376 F.3d at 223 (citations omitted). This is a more rigorous standard than that applicable to asylum and, thus, "an alien who fails to establish that he . . . has a well-founded fear of persecution, so as to be eligible for a grant of asylum, necessarily will fail to establish the right to withholding of removal [under the INA]." *Id.* (citing *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003)).

On appeal, we review the factual findings, including findings concerning past persecution and fear of future persecution, only to determine if they are supported by substantial evidence. *Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (quoting *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir. 1998)). Thus, under our narrow standard of review, "[t]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Shardar*, 382 F.3d at 323 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal conclusions *de novo*.

*Mendoza-Ordanez v. Att'y Gen.*, 869 F.3d 164, 169 (3d Cir. 2017) (citation omitted).

**III.**

Balami argues that the BIA erred in dismissing his appeal, which challenged the denial of his applications for asylum, withholding of removal under the INA, and relief under the CAT. Specifically, Balami argues that the BIA erred in affirming the IJ's conclusions that he had not established past persecution, a well-founded fear of future persecution, a nexus to a protected ground under the INA, or that his alleged persecution was committed by forces that the Nepalese government was unable or unwilling to control. He further argues that the BIA erred in affirming the IJ's conclusion that he had not established an entitlement to relief under the CAT, because he failed to establish that it was more likely than not that he would be tortured if returned to Nepal.

A.

To establish past persecution, an applicant for asylum must establish that he suffered treatment akin to "threats to life, confinement, torture, [or] economic restrictions so severe that they constitute a threat to life or freedom." *Kibinda*, 477 F.3d at 119 (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Thus, "persecution refers only to 'severe' conduct." *Id.* (quoting *Fatin*, 12 F.3d at 1240). An asylum applicant must also establish that "one central reason" for the persecution he encountered was "race, religion, nationality, membership in a particular social group, or political opinion," i.e., that there is a nexus between the harm suffered and a protected ground under the INA. 8 U.S.C. § 1158(b)(1)(B)(i).

6

"Severe conduct" that amounts to persecution "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." *Kibinda*, 477 F.3d at 119 (quoting *Fatin*, 12 F.3d at 1240). Rather, the conduct must be "extreme," not merely offensive, and it must cause a severe injury. *Id.* at 119-20 (quoting *Fatin*, 12 F.3d at 1243). And where the alleged persecution is grounded on threats, it is not sufficient to establish that the threats were "sinister and credible." *Chavarria v. Gonzalez*, 446 F.3d 508, 518 (3d Cir. 2006). Instead, the threats must be "highly imminent or concrete" and "so menacing as to cause significant actual 'suffering or harm.'" *Id.* at 518 (quoting *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005)).

Here, the IJ found that Balami's evidence of a single physical attack, being chased by Maoists, and verbal threats did not rise to the level of persecution, and the BIA agreed. In reaching this conclusion, both the IJ and BIA relied on this Court's decision in *Kibinda v. Attorney General of the United States*, 477 F.3d 113 (3d Cir. 2007), which concluded that an alien's mistreatment in prison that resulted in a physical injury that left a scar, but required only a few stitches, did not amount to persecution in the absence of additional evidence of severity. *Id.* at 119-20.

Balami now argues that the IJ and the BIA both erred in relying on *Kibinda*, noting that his physical injury, unlike Kibinda's, involved an *intentional* infliction of harm, and that he, unlike Kibinda, experienced additional harassment on other occasions. The decision in *Kibinda,* however, in no way rested on the state of mind of Kibinda's harassers and, thus, the fact that Kibinda's injury may have been inflicted unintentionally

7

while Balami's was intentionally inflicted is a factual distinction that is inconsequential to our severity analysis.  Moreover, we find no reversible error in the BIA's conclusion that the IJ correctly found that the 2013 physical attack, together with the armed chase and threats, did not rise to the level of past persecution.  Indeed, the threatening chase and oral threats, none of which resulted in actual physical harm, simply were not so imminent or menacing as to support a finding of persecution.  Accordingly, the record does not compel a conclusion that Balami's encounters with the Maoists were so severe as to constitute extreme conduct that amounted to persecution as is required to prevail on an asylum claim grounded on past persecution, and we reject Balami's argument to the contrary.

Balami also challenges the determination that he did not establish past persecution because he did not establish a nexus to a protected ground under the INA.  Where, as here, an applicant claims that he was persecuted on account of a political opinion, he must show that he was harmed due either to an actual political opinion or an imputed political opinion.  *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 108 (3d Cir. 2010) (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003)).  An applicant's claim grounded on an actual political opinion must "(1) specify the political opinion on which he . . . relies, (2) show that he . . . holds that opinion, and (3) show that he . . . would be persecuted or has a well-founded fear of persecution based on that opinion."  *Fatin*, 12 F.3d at 1242.  Where an applicant proceeds based on an imputed political opinion, the court may grant asylum "where the motives and perspective of the persecutor

demonstrate that the persecution was on account of a belief attributed to the alien, even where the alien did not overtly subscribe to that belief." *Chavarria*, 446 F.3d at 516 (citing *Desir v. Ilchert*, 840 F.2d 723, 728 (9th Cir. 1988)).

Here, the IJ concluded that Balami had not established the requisite nexus, noting that Balami claimed that the alleged persecution was on account of his "political opinion," but disavowed that he held any specific political opinion, and failed to establish that the Maoists imputed a particular political opinion to him. The BIA found no clear error in these determinations.

Balami does not argue that the record before the IJ conclusively established that he was persecuted on account of a political opinion. Rather, he argues that, because he was pursuing asylum pro se, the IJ had an affirmative duty to develop a more complete record by asking more probing questions. He contends that such questioning "could have revealed" more about the Maoists' motivations in pursuing him and, more particularly, could have revealed that the Maoists imputed a political opinion to him. (Balami Br. at 23.)

However, in spite of Balami's pro se status, he retained the burden of proving his eligibility for asylum. 8 C.F.R. § 208.13(a). While "an IJ has a duty to develop an applicant's testimony," *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006), and the INA requires the immigration judge to "interrogate, examine and cross-examine the alien," 8 U.S.C. § 1229a(b)(1), we conclude, upon reviewing the record, that the IJ appropriately developed Balami's testimony here. Indeed, the IJ questioned Balami at

9

length, attempting to clarify and draw out his testimony. Moreover, the IJ explicitly asked Balami why he believed the Maoists were interested in recruiting him, and Balami responded that he did not know. While Balami also testified that his grandfather was involved in the Congress Party and had been displaced as a result of problems with the Maoists, this testimony did not demand further development from the IJ because Balami never asserted that the Maoists who approached him knew his grandfather or imputed his grandfather's political opinions to him. Under these circumstances, we conclude that the IJ adequately discharged any duty to inquire as to the Maoists' motivations, and we reject Balami's argument to the contrary.

We thus affirm the determination that Balami has not established the requisite nexus between his alleged persecution and his actual or imputed political opinion. Accordingly, for this reason and because substantial evidence supports the conclusion that Balami failed to establish severe conduct that amounted to persecution, we will deny Balami's petition insofar as it challenges the determination that he was not statutorily eligible for asylum based on past persecution.

B.

As noted above, an applicant can also establish an entitlement to asylum if he can establish a well-founded fear of future persecution. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(a). To establish such a fear, the applicant must show that he has a subjective fear of future persecution and that the fear is objectively reasonable. *Lukwago*, 329 F.3d at 175 (citing *Abdilie v. Ashcroft*, 242 F.3d 477, 495-96 (3d Cir. 2001)). To meet the

objective reasonableness prong, the applicant must show either that there is a reasonable possibility that he will be singled out individually for persecution, or that there is a "pattern or practice of persecution" against those sharing his political opinion in his home country. 8 C.F.R. § 208.13(b)(2)(iii).

Here, the IJ found that Balami's fear of future persecution was not objectively reasonable because the evidence showed that the Maoists had not harmed his immediate family members who remained in Nepal and there was no evidence in the record that the Maoists are presently persecuting individuals in Nepal. *See, e.g.*, *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished." (citations omitted)). He therefore determined that Balami had not established a well-founded fear of future persecution. The BIA affirmed the IJ's determination for the reasons provided by the IJ.

Balami argues that substantial evidence does not support the IJ's determination that his fear of being singled out for persecution was not objectively reasonable because there was evidence in the record that Maoists (1) are a violent group, (2) repeatedly targeted him, and (3) told his parents that they would take severe action against him if he returned to the country. In essence, Balami disagrees with the IJ's interpretation and weighing of the evidence. However, contrary to Balami's argument, the record simply does not compel the conclusion that Balami's fear of persecution was objectively

11

reasonable because it clearly demonstrates that Balami's immediate family has avoided any harm since he left the country and there is no record evidence that the Maoists are currently persecuting members of the Nepali Congress Party.[2]  Accordingly, substantial evidence supports the conclusion that Balami had not established a well-founded fear of future persecution.  We will therefore deny Balami's petition insofar as it challenges the denial of his application for asylum based on fear of future persecution.

## C.

Having concluded that the record does not compel a conclusion that Balami has established extreme conduct amounting to past persecution, a nexus to a protected ground under the INA, or an objectively reasonable fear of future persecution, and that Balami has therefore failed to establish his eligibility for asylum, we also conclude that the BIA properly denied the withholding of removal under the INA.  Indeed, "[i]f [an applicant] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal under [the INA]."  *Lukwago*, 329 F.3d at 182.  We will therefore deny Balami's petition insofar as it challenges the denial of his application for withholding of removal under the INA.

## D.

Where an alien seeks protection under the CAT, he must show that it is "more

---

[2] Balami also challenges the IJ's conclusion that he did not establish eligibility for asylum because he failed to demonstrate that the Nepalese government was unwilling or unable to control the Maoists.  We need not reach this alternative basis for denying asylum, however, because we affirm the denial of asylum on other grounds.

likely than not" that he "would be tortured if removed to the proposed country of removal." *Kibinda*, 477 F.3d at 123 (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002)); 8 C.F.R. § 1208.16(c)(2). "For an act to constitute torture . . . , it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005). The IJ found that Balami had not demonstrated that that it was more likely than not that he would suffer treatment that would meet the legal definition of torture if he were returned to Nepal, and the BIA found no clear error in that finding.

Balami argues that the IJ's finding was not supported by substantial evidence. He again emphasizes that Maoist individuals attacked him with a beer bottle and asserts that the Maoists have a history of engaging in torture that Nepalese security officials disregard. However, the evidence on which Balami relies simply does not compel a conclusion that it is more likely than not that Balami will be personally subjected to conduct causing severe pain or suffering with the acquiescence of government officials if he is returned to Nepal. Rather, there is substantial evidence to support the IJ's conclusion that Balami has not met his burden of establishing a likelihood of being subjected to torture. We will therefore deny Balami's petition insofar as it challenges the denial of his application for relief under the CAT.

**IV.**

13

For the reasons set forth above, Balami has failed to show that the BIA erred in denying his requests for asylum, withholding of removal, and/or protection under the CAT. We will therefore deny Balami's petition for review in its entirety.